UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JOE HAND PROMOTIONS, INC.,**

      **Plaintiff,**

v.                                                                                  Case No:   6:19-cv-516-Orl-37EJK

**GILSON MORTIMER,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

      This cause comes before the Court on Plaintiff's Motion for Default Judgment ("the Motion"). (Doc. 35.) Defendant Gilson Mortimer has not responded to the Motion or otherwise appeared in this action. Upon consideration, I respectfully recommend that the Motion be granted.

**I.   BACKGROUND**

      Plaintiff instituted this action against Defendant[1] for his alleged unauthorized commercial use of the *Floyd Mayweather, Jr. vs. Conor McGregor* pay-per-view event (hereinafter the "Boxing Match") at Café Kreol (hereinafter the "Venue"), in violation of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605, and United States copyright laws. (Doc. 11.) In the Complaint,[2] Plaintiff alleges that it was assigned the right both to distribute and to authorize the public performance of the Boxing Match pursuant to the Copyright Act, 17 U.S.C. § 106(3) and (4). (*Id.* ¶ 6.) Defendant could display the Boxing Match at the Venue only if he paid a commercial licensing fee, which is based on the capacity of the Venue. (*Id.* ¶¶ 10–11.) Instead of paying a

---

[1] On April 14, 2020, Plaintiff entered a notice of voluntary dismissal as to Defendant Café Kreol & Bar Corp. (Doc. 33.) Subsequently, the Court entered an Order terminating Defendant Café Kreol & Bar Corp as a party in this action. (Doc. 34.)

[2] The undersigned will refer to the Amended Complaint (Doc. 11) as the "Complaint."

commercial licensing fee, Defendant purchased the Boxing Match at the rate for individual, non-commercial use, and displayed it via a cable or satellite signal at the Venue. (*Id.* ¶¶ 11–14, 19.)

Plaintiff personally served Defendant on July 8, 2019. (Doc. 27.) A clerk's default was entered against Defendant (Doc. 29), and Plaintiff now moves for default judgment (Doc. 35). Plaintiff attaches the Declaration of Ryan R. Janis[3] (Doc. 35-5) to the Motion, and Mr. Janis avers that he personally visited and took screenshots of the Venue's Facebook page, where the Boxing Match viewing party was advertised. (Doc. 35-5, ¶ 3.) Mr. Janis also states that he took screenshots of a video posted on Sousa Samedia Live's[4] Facebook page, showing the unauthorized exhibition of the Boxing Match at the Venue. (*Id.* ¶ 4.) Mr. Janis's screenshots are attached as separate exhibits. (Docs. 35-6, Doc 35-7.) In the Declaration of Joe Hand, the president of Joe Hand Promotions, Mr. Hand states that based on the Venue's alcohol license information (Doc. 35-9), the Venue has a capacity of between 1–49 people. (Doc. 35-4, ¶ 14.)

Plaintiff requests a judgment of $22,150.00 in damages and fees, representing $5,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $15,000.00 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), $1,500 in attorneys' fees and $650 in costs.[5] (Doc. 35-1 at 17.) In support of the statutory damages, Mr. Hand avers that a sublicense fee for an exhibition at the Venue would have been $3,700.00 (Doc. 35-4, ¶ 7) and contends that Defendant made $1,300 in profits from displaying the Boxing Match (Doc. 35-1 at 10). To justify an award of enhanced statutory damages, Plaintiff argues that because there was no way that "Defendant could have 'innocently' accessed the broadcast of the [Boxing Match], it appears that [he]

---

[3] Mr. Janis represents that he is counsel for Plaintiff. (Doc. 35-5, ¶ 1.)
[4] Plaintiff does not state who or what Sousa Samedia Live is and its relationship to Defendants or the Venue.
[5] Plaintiff elects to abandon its claims under the Copyright Act and 47 U.S.C. § 553; instead, Plaintiff moves for damages under only § 605. (Doc. 35 at 7 n.1.)

specifically and willfully acted to illegally intercept the transmissions of the [Boxing Match]." (Doc. 35-1 at 11–12.) The $1,500 in attorneys' fees represents six hours of attorney time at a rate of $250.00 per hour. (Doc. 35-8, ¶ 9.) Finally, Plaintiff's counsel states that it spent $400 on the filing fee and $250 to perfect service of process on Defendant. (*Id.* at 10.)

## II. STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, a court may enter a default judgment against the party. Fed. R. Civ. P. 55(b). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The Eleventh Circuit has interpreted "a sufficient basis" as "being akin to . . . survive a motion to dismiss for failure to state a claim." *Id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Generally, where service of process is insufficient, [a] court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003), *citing Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir. 1982) In addition to adequate service of process, the party moving for default judgment must demonstrate that a court has jurisdiction over the parties. *See Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*, No. 6:11-cv-1054-Orl-28, 2011 WL 6752561, at *2 (M.D. Fla. Nov. 16, 2011), *report and recommendation adopted*, No. 6:11-cv-1054-Orl-28, 2011 WL 6752557

(M.D. Fla. Dec. 22, 2011) ("In addition to a showing of adequate service of process (or a showing sufficient to establish waiver of same), a Court must assure itself of jurisdiction over the action and the parties."). "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003).

### III.  DISCUSSION

Based on the allegations in the Complaint, Plaintiff has alleged sufficient facts to demonstrate a violation of 47 U.S.C. § 605. (*See* Doc. 11) and entitlement to a judgment in its favor.

#### a.  Adequacy of Service and Personal Jurisdiction as to Mortimer

The Federal Rules of Civil Procedure provide that an individual can be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). In the instant case, Plaintiff personally served Mortimer at 3855 Shoreside Drive, Kissimmee, Florida 34746-1968. (Doc. 27.) Because Plaintiff personally served Mortimer in Florida, the undersigned finds that was service adequate and the Court has personal jurisdiction over Mortimer.

#### b.  Liability Under the Communications Act

The Communications Act of 1934 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any

> information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). It also permits a private right of action against parties that violate § 605(a) and awards aggrieved parties statutory damages, attorneys' fees, and costs. 47 U.S.C. § 605(e)(3)(B)(i), (ii) ("The court . . . may award damages described in [47 U.S.C. § 605(e)(3)](C) [,] . . . full costs, including reasonable attorneys' fees."). For Plaintiff to establish a violation of § 605, it must show that "(1) Defendant[] intercepted the transmission of the boxing match; (2) Defendant[] did not pay for the right to receive the transmission; and (3) Defendant[] displayed the boxing match to the patrons of [his] commercial establishment." *Joe Hand Promotions, Inc. v. Prevot*, No. 8:19-cv-651-T-24SPF, 2019 WL 4694530, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Joe Hand Promotions, Inc. v. Martinez*, 2019 WL 3082582, at *3 (N.D. Ala. July 15, 2019)).

In the Complaint, Plaintiff alleges that Defendant intercepted the transmission for the Boxing Match by either purchasing a non-commercial use license, using a residence's signal instead of one for commercial use, or violating the terms of his television service provider agreement. (Doc. 11, ¶¶ 12–14.) Plaintiff also alleges that Defendant exhibited the Boxing Match, without a proper license, at the Venue in order to attract customers. (*Id.* ¶¶ 15–16.) Therefore, Plaintiff alleges enough facts to demonstrate a willful violation of § 605.

### c. Damages Under the Communications Act

Under 47 U.S.C. § 605(e)(3)(C)(i)(II), an aggrieved party may recover between $1,000 and $10,000 in statutory damages for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). If a defendant willfully violated the provision, then a court may award up to $100,000 in enhanced statutory damages. 47 U.S.C. § 605(e)(3)(C)(ii). Factors for determining the amount of statutory damages include

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*Kingvision Pay-Per-View Corp. v. El Torito Supermarket, Inc.*, No. 6:06-cv-657-Orl-18KRS, 2007 WL 1794158, at *4 (M.D. Fla. June 19, 2007) (quoting *DirectTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D.Ala.2004)).

"The Court must strike a balance between deterring other incidents of piracy by the[] [d]efendants and others, and not making the award such that it will put a small business out of business." *J & J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009). It is common practice in this District to award enhanced statutory damages equal to three times the statutory damages amount. *See e.g. Kingvision Pay-Per-View Corp., LTD. v. Wright*, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450, at *3 n. 8 (M.D. Fla. Oct. 27, 2006) (awarding an enhanced statutory damages amount that is three times the actual damage); *J & J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009) (awarding enhanced statutory damages of three times the statutory damages amount where the defendant did not charge a cover fee or was a repeat offender); *Prevot*, 2019 WL 4694530, at *3 (awarding enhanced damages that represent three times the statutory

damages amount).

In the instant Motion, Plaintiff contends that $20,000 would provide adequate compensation, penalize Defendant, and deter future would-be violators. (Doc. 30 at 13.) Plaintiff requests $5,000 in statutory damages pursuant to § 605(e)(3)(c)(i)(II) and $15,000 in enhanced statutory damages pursuant to § 605(e)(3)(C)(ii). (Doc. 30 at 13.) The statutory damages represent the unpaid $3,700 sublicense fee and $1,300 in profits gained by Defendant from the unauthorized broadcast, while the enhanced statutory damages reflect three times the statutory damages amount. (Doc. 30 at 10, 13.)

The undersigned does not find Plaintiff demonstrated that it should be awarded $5,000 in statutory damages. In actions arising under § 605, the aggrieved party generally includes information on the commercial licensing fee and the number of patrons viewing the illegally intercepted event. *See e.g. Joe Hand Promotions, Inc. v. Santana*, No. 6:19-cv-116-Orl-37GJK, 2019 WL 6134420, at *5 (M.D. Fla. Nov. 1, 2019), *report and recommendation adopted*, No. 6:19-cv-116-Orl-37GJK, 2019 WL 6133737 (M.D. Fla. Nov. 19, 2019) (awarding damages based on the number of patrons the plaintiff averred to be present at the exhibition); *Attia*, 2016 WL 7015686, at *4 (finding that the defendant could have reasonably made $900 in unknown profits since there were 12 people viewing the intercepted event); *Prevot*, 2019 WL 4694530, at *2 (finding that the defendant could have reasonably made $1,300 in unknown profits since there were 67 viewing the intercepted event and the venue charge a $10 cover fee).

In the instant case, Plaintiff provides information only about the commercial licensing fee—there are no declarations or any allegations indicating how many people were at the Venue during the event or whether Defendant charged a cover fee. (*See* Docs. 10, 30.) Based on prior cases, it seems unlikely that Defendant made $1,300 in profits since the Venue holds a maximum

of 49 people. *Compare* (Docs, 10, 30) *with Prevot*, 2019 WL 4694530, at *2 (finding that the defendant could have reasonably made $1,300 in unknown profits since there were 67 viewing the intercepted event and the venue charged a $10 cover fee). However, Plaintiff attaches information about its commercial licensing fee for the Boxing Match and the maximum capacity of the Venue. (Docs. 30-7, 30-9). As such, Plaintiff provided enough information to determine damages based on the unpaid commercial licensing fee.

Defendant would have paid $3,700 to exhibit the Boxing Match at the Venue based on the price list for a commercial license of the Boxing Match (Doc. 30-9) and the licensee information for the Venue (Doc. 30-7). Additionally, since Defendant willfully violated § 605, the undersigned recommends that the enhanced statutory damages should be $11,100, representing three times the commercial licensing fee.

### d. Attorneys' Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), "[t]he court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." A Court may rely on its own knowledge in determining whether the hourly rate and the number of hours expended on the matter were reasonable. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In the instant case, the undersigned finds that the requested hourly rate ($250) and hours worked (6) (Doc. 30-6, ¶ 9) for this type of work in the Orlando market are reasonable. *See also Attia*, 2016 WL 7015686, at *5 (finding that six hours of work at a rate of $250 an hour was reasonable in a § 605 violation case where the defendants failed to appear, and the plaintiff moved for default judgment). However, Brian T. Giles's declaration[6] does not establish that $650 in costs is reasonable.

---

[6] Mr. Giles represents he is also counsel for Plaintiff in this action. (Doc. 35-8, ¶ 1.)

In Plaintiff's original motion for default judgment, Mr. Giles averred that Plaintiff spent a total of $250 to effectuate service of process on both Mortimer and Café Kreol & Bar Corp. (Doc. 30-6, ¶ 10.) In the instant Motion, Mr. Janis now avers that Plaintiff spent $250 in serving Mortimer alone. Plaintiff does not attach any documentation indicating that it spent $250 to serve Defendant. In light of this discrepancy, the Court will assume that the original, lower number is correct, and for the purposes of evaluating costs, finds that Plaintiff is entitled to half of that number, or $125, for serving Defendant alone. Thus, the undersigned recommends that the Court award Plaintiff $1,500 in attorney's fees and $525 in costs.

## IV.  RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that:

1. The Motion (Doc. 35) be **GRANTED IN PART AND DENIED IN PART** as follows:
   a. The Motion be **GRANTED** to the extent that the Court enter default judgment as to Defendant Gilson Mortimer;
   b. Plaintiff be **AWARDED** statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of **$3,700**; enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of **$11,100**; and attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of **$2,025**.
2. Thereafter, the Clerk of the Court be **DIRECTED** to close this case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 23, 2020.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties